

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

JOAO DEOLIVEIRA                         CIVIL ACTION NO. 07-767

VERSUS                                  JUDGE MELANÇON

CHEVRON USA, INC, ET AL                 MAGISTRATE JUDGE METHVIN

## MEMORANDUM RULING

Before the Court are Chevron USA, Inc.'s ("Chevron") Motion for Summary Judgment [Rec. Doc. 68], Joao Deoliveira's ("Deoliveira" or "plaintiff") Memorandum in Opposition thereto [Rec. Doc. 77], and Chevron's Reply to plaintiff's Opposition [Rec. Doc. 84]. Also before the Court are Danos & Curole Marine Contractors, LLC's ("Danos") Motion for Summary Judgment [Rec. Doc. 70], plaintiff's belated Opposition thereto [Rec. Doc. 85]; Danos's Motion to Strike Opposition [Rec. Doc. 86], plaintiff's Opposition to Danos's Motion to Strike [Rec. Doc. 88], and Danos's Motion for Leave to File Response to plaintiff's belated Opposition [Rec. Doc. 87].[1] Also before the Court is Century Technical Services, LLC's ("CTS") unopposed Motion for Summary Judgment [Rec. Doc. 71].[2] For the reasons that follow,

---

[1] While plaintiff's opposition to Danos's Motion was, in fact, untimely, the Court accepts the submission and will deny Danos's Motion to Strike [Rec. Doc. 86]. In the interest of fairness, the Court will grant Danos's Motion for Leave [Rec. Doc. 87] and will consider its proposed reply to the late opposition as well.

[2] The Court notes that plaintiff has not filed an opposition to CTS's motion. While the fact that CTS's motion is unopposed does not necessarily mean CTS should prevail on the merits, the plaintiff's failure to file an opposition and statement of contested material facts does require the Court to deem CTS's statement of uncontested material facts admitted for purposes of the instant motion. Local Rule 56.2.; *See also Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995) ("A motion for summary judgment cannot be granted simply because there is no opposition, even if failure to oppose violated a local rule. The movant has the burden of establishing the absence of a genuine issue of material fact and, unless he has done so, the court may not grant the motion, regardless

Chevron's Motion [Rec. Doc. 68], Danos's Motion [Rec. Doc. 70] and CTS's unopposed Motion [Rec. Doc. 71] will all be **GRANTED**.

## I. BACKGROUND

Chevron owns certain drilling platforms located on the Outer Continental Shelf in the Gulf of Mexico commonly referred to as the Main Pass 41 Field. Located within this field is a satellite platform referred to as Main Pass 30 Alpha (hereinafter "MF 30-A"). Chevron contracted with Waveland Services, Inc. ("Waveland") to perform sandblasting, cleaning, and painting services on MP 30-A and other structures in the Main Pass 41 Field. On April 3, 2007, plaintiff, an employee of Waveland, was working on the MP 30-A platform when the ladder he was using allegedly collapsed causing him to fall three to four feet, injuring his right hand and lower back. Plaintiff alleges that the ladder collapsed as a result of rotten and/or corroded bolts in the top of the ladder. At the time of the alleged accident, Danos and CTS were also engaged by Chevron as independent contractors on MP 30-A providing contract operators for the production of oil and gas and inspectors for the painting and sandblasting operations, respectively.

Plaintiff initiated this case on May 1, 2007 seeking damages allegedly suffered as a result of the accident. As defendants, plaintiff named Chevron, CTS, and Danos (collectively, "defendants") alleging that each is liable for the damages

of whether any response was filed.").

2

incurred as a result of the accident.[3]  The defendants have each filed Motions for Summary Judgment [Rec. Docs. 68, 70, & 71] arguing that they are not liable, as a matter of law, for the plaintiff's alleged injuries.  Plaintiff opposes Chevron and Daros's motions but has not opposed CTS's motion.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the record reflects "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©.  To determine whether a genuine issue of material fact exists, "we view facts and inferences in the light most favorable to the nonmoving party." *Mahaffey v. Gen. Sec. Ins. Co.*, 543 F.3d 738, 740 (5th Cir. 2003).  Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id.*  If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that

---

3    Werner Co. was also named as a defendant, but was  terminated on March 25, 2008 pursuant to a Voluntary Motion to Dismiss [Rec. Doc. 53] filed by plaintiff.

there is a genuine issue for trial.[4] *Id.* at 322-23. Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.*, 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson*, 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ.

---

[4] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden of proof at trial. A complete failure of proof by the nonmoving party of these essential elements renders all other facts immaterial. *Id.* at 322.

P. 56©; *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III. ANALYSIS

The facts giving rise to this case all occurred on a fixed production platform located on the Outer Continental Shelf off the coast of Louisiana in the Gulf of Mexico. The Outer Continental Shelf Lands Act (the "OCSLA"), 43 U.S.C. § 1331, *et seq*, provides that the law of the adjacent state serves as surrogate federal law when the controversy arises on a situs covered by the OCSLA, federal maritime law does not apply of its own force, and state law is not inconsistent with federal laws and regulations. 43 U.S.C. §1333(a). Here, it is undisputed that there is no maritime nexus and Louisiana law is not inconsistent with federal law. Accordingly, the law of Louisiana applies.

A.  *Liability of Chevron*

Plaintiff argues that Chevron is liable for his injuries pursuant to Louisiana Civil Code Articles 2315, 2317.1, and 2322 as well as under the theory of vicarious liability. Each of these arguments will be addressed in turn.

1.  *Civil Code Articles 2315*

Louisiana Civil Code Article 2315, the general tort negligence article of the Civil Code, article provides, in pertinent part, "Every act whatever of man that causes

5

damage to another obliges him by whose fault it happened to repair it." La. Civ. Code Art. 2315(A). To hold a defendant liable under this provision, a plaintiff must prove five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element). *Roberts v. Benoit*, 91-0394 (La. 9/9/91), 605 So.2d 1032, 1051, (*citing Fowler v. Roberts,* 556 So.2d 1, 4 (La. 1989)). Here, the focus of the inquiry is on the duty and breach of duty elements.

Plaintiff argues that, though he served as an independent contractor, Chevron, as owner of the platform, nonetheless owed him a duty to provide a reasonably safe working environment. *See Dupre v. Chevron U.S.A.*, 20 F.3d 154, 157 (5th Cir. 1994). Plaintiff alleges that a material issue of fact exists as to whether Chevron breached this duty by providing an unsafe ladder to plaintiff for his work. The key issue is who owned the ladder – Chevron or Waveland. If Chevron owned the ladder, it is fair to impose a duty upon them to ensure the ladder was in a reasonably safe condition. If, however, the ladder was Waveland's, Chevron had no duty to inspect the ladder before plaintiff began his work. During his deposition, Edward Caswell, the owner of Waveland, was directly asked "Do you know who owns that

ladder?," to which he unequivocally responded "I own the ladder." *Deposition of Ed Caswell* [Rec. Doc.68-4], pg 14. This assertion was further confirmed by Blake LeBouef, Waveland's project manager; Alan Dean Palmer, Waveland's on-site supervisor; and Jody Aguillard, a Waveland employee, in their depositions. *Deposition of Blake LeBouef* [Rec. Doc.68-5], pg 10; *Deposition of Alan Dean Palmer* [Rec. Doc.84-2], pg 35; *Deposition of Jody Aguillard* [Rec. Doc.68-5], pg 33. Additionally, the Master Service Contract between Waveland and Chevron specifically states that Waveland was to provide and maintain all necessary equipment for its sandblasting and painting work. *Master Service Contract* [Rec. Doc. 68-4], pg. 5. In support of his position that a material issue of fact remains regarding the ownership of the ladder, plaintiff cites the deposition of Britt Clark, a co-worker of plaintiff, who stated that ". . . as far as me saying whose ladder it is, I don't know. It could have very well been a Chevron ladder. [. . . ] As far as a Waveland ladder, it could be a Waveland ladder." *Deposition of Britt Clark* [Rec. Doc.77-5], pg. 19.[5] In light of the evidence presented, the Court cannot say that there is a legitimate dispute regarding the ownership of the ladder. Viewing the

---

[5] Further, in response to the direct question, "Is it fair to say that you don't know who owned the ladder that he was working on at the time of the incident?," Clark responded "No, sir. [. . . ] It could have been a structure, a platform ladder, or it could have been a Waveland ladder." *Id.*

Plaintiff also cites as evidence his own deposition wherein he stated that he heard a non-Chevron employee state that "This is Chevron's ladder." Plaintiff, however, did not know who made this statement. In any event, plaintiff's testimony is a textbook example of inadmissible hearsay as it is ". . . a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." F.R.E. 801. Further, the statement does not fit into any of the applicable exceptions to the general hearsay rule and will thus be disregarded. F.R.E. 803

evidence adduced in the light most favorable to the plaintiff, the mere equivocal statement by a Waveland employee that he thought it might have been Chevron's ladder is not enough to create a material issue of fact where several other Waveland employees and Waveland's owner unequivocally testified that the ladder, in fact, belonged to Waveland. Accordingly, plaintiff's claim pursuant to Article 2315 against Chevron must be dismissed as Chevron owed plaintiff no duty to ensure that the ladder was reasonably safe.

2.    *Louisiana Civil Code Articles 2317.1 and 2322*

Article 2317.1 of the Louisiana Civil Code states, in pertinent part, "The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code Art. 2317.1. In the same vein, Article 2322 provides, in pertinent part, "The owner of a building is answerable for the damage occasioned by its ruin, when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction. However, he is answerable for damages only upon a showing that he knew or, in the exercise of reasonable care, should have known of the vice or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care." La. Civ. Code Art. 2322. Plaintiff's

arguments for liability under these articles are premised on Chevron's ownership of the ladder.[6] As it has already been determined that there is no material issue of fact concerning the ownership of the ladder, plaintiff's claims under these articles must also be dismissed.

3.    *Vicarious Liability*

Having determined that Chevron is not independently liable for plaintiff's alleged injuries, the Court must now turn to whether Chevron can be held vicariously liable. Under Louisiana law, a principal cannot be held liable for injuries resulting from the negligent acts of an independent contractor unless (1) the liability arises from an ultra-hazardous activity performed by the contractor or (2) the principal retained operational control over the contractor's acts or expressly or impliedly authorized those acts. *Coulter v. Texaco, Inc.*, 117 F.3d 909, 911-12 (5th Cir. 1997); *Graham v. Amoco Oil Co.*, 21 F.3d 643, 645 (5th Cir. 1994). It is undisputed that plaintiff was not engaged in ultra-hazardous activities. However, plaintiff argues that a material issue of fact exists as to whether Chevron retained "operational control" sufficient to impose vicarious liability.

Under Louisiana law, "[o]perational control exists only if the principal has direct supervision over the step-by-step process of accomplishing the work such that the

---

[6]    While liability under these articles also extends to custodians of things, at no point did plaintiff argue that Chevron exercised the requisite control over the ladder sufficient to render it the custodian thereof. Further, there is also no argument that the ladder was a "part" of the platform pursuant to Article 2322. Plaintiff's sole theory of liability, as it relates to these articles, was that Chevron owned the ladder and was, thus, answerable for the damages caused by its collapse.

con·ractor is not entirely free to do the work in his own way." *Fruge v. Parker Drilling Co.,* 337 F.3d 558, 564 (5th Cir. 2003) (*citing LeJeune v. Shell Oil Co.,* 950 F.2d 267·270 (5th Cir.1992); *McCormack v. Noble Drilling Corp.,* 608 F.2d 169, 175 n. 9 (5th Cir.1979)).  Here, it is undisputed that the Master Service Contract between Waveland and Chevron clearly stated that Waveland, as an independent contractor, bore the responsibility of performing its work in a good, safe, and workman like manner.  However, the contractual provision alone is not determinative.  *See Melancon v. Amoco Prod. Co.,* 834 F.2d 1248, 1245 (5th Cir. 1988).  The Court must also look to the actual conduct of the parties in carrying out the contract.  *Id.*  There is some dispute regarding whether a Chevron employee was on the platform at the time of the accident, but plaintiff is unable to point to any evidence whatsoever tending to show that any Chevron employee, on or off the platform, directed the work of the Waveland employees.  Assuming, *arguendo,* that a company man was present, this alone does not equate to operational control.  *See Ainsworth v. Shell Offshore, Inc.,* 829 F.2d 548, 550 (5th Cir. 1987) (*citing Williams v. Gervais F. Favrot Co.,* 299 So.2d 623 (La. App. 4th Cir. 1986)).

Similarly, while Chevron set forth certain specifications for the quality of the work and inspected the work done, without more there is no indicia of operational control by Chevron.  *Id* (stating "... [t]he fact that [the owner] periodically inspected the jobsite to be sure that work was being performed in accordance with the specifications does not constitute the exercise of operational control.").  Taking the

evidence in the light most favorable to the plaintiff, there is simply no showing of operational control in this case. Accordingly, Chevron's motion for summary judgment will be granted and plaintiff's claims against it dismissed.

B.   *Liability of CTS*

CTS was an independent contractor hired by Chevron to provide paint inspectors. *CTS's Statement of Uncontested Material Facts* [Rec. Doc. 71-10], pg. 3. CTS did not provide equipment to Waveland or its employees, did not instruct Waveland or its employees on how to carry out their tasks, and was not responsible for inspection of Waveland's equipment. *Id.* CTS's sole task on the MP 30-A was to report to Chevron regarding Waveland's compliance with Chevron's specifications for painting and sandblasting. *Id.* Given these uncontested facts, CTS argues that it cannot be liable for plaintiff's alleged accident and concomitant injuries as it owed no duty to protect the plaintiff from dangers associated with the ladder.

Duty is a question of law. *Roberts v. Benoit*, 605 So.2d 1032 (La.1991). The determination whether or not a particular defendant owed a duty to a particular plaintiff is imperative because "[i]t is a fundamental principle of tort law that there can be negligence unless there is first a duty." *Kerr-McGee Corp. v. Ma-Ju Marine Services*, 830 F.2d 1332, 1340 (5th Cir.1987). Under Louisiana law, independent contractors owe each other " . . . at the very least, [. . .] the duty to refrain from gross, willful or wanton negligence, and at most the duty to refrain from creating an unreasonable risk of harm or a hazardous condition." *Lafont v. Chevron, U.S.A.,*

*Inc.*, 593 So.2d 416 (La. App. 1 Cir. 1991). Here, plaintiff makes no allegation that CTS or its employees engaged in ". . . gross, willful or wanton negligence" or that they created any unreasonable risk of harm or hazardous condition. In fact, it is undisputed that CTS did not own the platform or the ladder, was not responsible for inspecting the ladder, did not supply the ladder to plaintiff, and did not direct plaintiff's work with the ladder. Accordingly, plaintiff cannot establish that CTS breached the duty owed and CTS's motion for summary judgment must be granted.

C.     *Liability of Danos*

The sole point of contention between plaintiff and Danos is whether Danos, ". . . contractually assumed the obligation [to] prevent the harm that [plaintiff] suffered." *Plaintiff's Memorandum in Opposition to Summary Judgment* [Rec. Doc. 85]. In support of his argument that Danos assumed liability for his safety, plaintiff cites a provision in the contract between Chevron and Danos and the case of *Wicker v. Harmony Corp.*, 2000-0231 (La. App. 1 Cir. 03/28/01), 784 So.2d 660. Plaintiff's reliance, however, is misplaced. In *Wicker*, the Louisiana First Circuit Court of Appeal found that an independent contractor can be liable for the injuries of an employee of the contractee if the contractor contractually assumes that obligation. However, the situation presented here is distinguishable. Here, plaintiff was an employee of Waveland. Waveland was, in no way, a party to the contract relied on by plaintiff and thus plaintiff may not avail himself of the provisions thereof.

Were the Court to find, however, that plaintiff could avail himself of the cited

provision, plaintiff's claims against Danos must nonetheless be dismissed. The cited provision states that Danos shall be responsible for the safe performance of the work performed on the MP 30-A platform. However, the "work" is defined in that agreement as the work preformed by Danos. Here, the accident giving rise to this case resulted solely from the work preformed by Waveland. Accordingly, Danos's motion for summary judgment must be granted and plaintiff's claims against Danos dismissed.

## IV. CONCLUSION

Plaintiff, an employee of an independent contractor of Chevron, has simply presented no evidence whatsoever in support of its contention that Chevron, CTS, and Danos are liable for his injuries. Plaintiff's course of recovery lies solely with his employer, Waveland. Accordingly, the Court will grant the defendants' Motions for Summary Judgment [Rec. Docs. 68, 70, & 71].